# In the United States Court of Federal Claims

JOE ALLEN WIXSON,

    *Plaintiff,*

v.

THE UNITED STATES,

    *Defendant.*

No. 22-1201 L
(Filed: October 8, 2024)

Joe Allen Wixson, Zenia, CA, pro se[1]

Peter W. Brocker, Environmental and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting in Part and Denying in Part the Government's Motion to Dismiss**

**SILFEN,** *Judge.*

    Joe Allen Wixson alleges that the government took his private property for public use by allowing it to be destroyed by a fire. He alleges that the decisions by the U.S. Forest Service to cancel prescribed burns and employee trainings during the covid-19 pandemic, and then to use defensive firefighting techniques during a windy day, caused the fire to affect his property. The government moves to dismiss for lack of subject-matter jurisdiction—arguing that Mr. Wixson's complaint alleges only negligence, a tort—and for failure to state a claim—arguing that there was no affirmative act by the government that resulted in a taking. ECF No. 20. Some of Mr. Wixson's counts plead only negligence, but others at least plausibly allege affirmative acts that would

---

[1] Joseph Fellows, previously representing Mr. Wixson, is no longer the attorney of record on this case.

foreseeably result in fire damaging Mr. Wixson's property. The court therefore **grants in part and denies in part** the government's motion to dismiss.

I.      **Background**

In August 2020, multiple wildfires started in California and merged into a complex fire that lasted until at least September. ECF No. 19 at 2 [¶8], 3 [¶¶10-11]; *see also* ECF No. 20 at 3 (government arguing that the fire lasted into November). At least one of those fires was started by lightning. ECF No. 19 at 3 [¶9]; *see* ECF No. 20 at 2. In September 2020, fire burned "several of [Mr. Wixson's] homes, buildings, heavy equipment, millions of feet of merchantable timber and much more personal property" in Kettenpom, California. ECF No. 19-1 at 1.

Mr. Wixson has two theories for what caused his property to burn. In his initial complaint, Mr. Wixson alleged that the U.S. Forest Service set so-called "backfires"—controlled burns that were lit intentionally with the goal of controlling the path of a wildfire—to burn eastward and limit the fuel load available to the complex fire. ECF No. 1 at 2. The westerly winds that day caused the backfires to explode and reach Mr. Wixson's property "in less than 48 hours." *Id.* In his second amended complaint, Mr. Wixson added that the government canceled prescribed burns during the covid-19 pandemic and canceled training for Forest Service employees. ECF No. 19 at 3 [¶15], 5 [¶28], 6 [¶¶36-37]. He alleged that those cancellations meant that the Forest Service did not do its ordinary maintenance of controlled burns and improperly set backfires on days with a high risk of wildfire growth. ECF No. 19 at 2, 4, & 6 [¶¶6-7, 22, 36].

Under either theory, Mr. Wixson alleges that his property would not have burned but for the government's actions and inaction.

Mr. Wixson filed suit in this court without an attorney. The court offered to refer him to the court's pro bono program, and Mr. Wixson accepted. *See* ECF Nos. 6, 7. Through the pro bono

program, the Court of Federal Claims Bar Association notified attorneys that Mr. Wixson, a pro se party, would like representation, but the choice to accept representation was between the party and the attorney. *See* https://cfcbar.org/programs/#1636952897484-08c4f6f2-75c6 (last visited September 18, 2024). An attorney, Joseph Fellows, began representing Mr. Wixson beginning in October 2022. ECF No. 10. Unfortunately for Mr. Wixson, other parties before this court, and the court itself, Mr. Fellows, in more than one case, missed court-imposed deadlines, was unresponsive to his clients and the court, and may have intentionally provided false or misleading information to explain his conduct. *In Re Joseph Blake Fellows* (July 19, 2024), https://uscfc.uscourts.gov/node/3379. Mr. Fellows failed to respond to an investigation committee inquiry, and in July 2024 the Court of Federal Claims Bar indefinitely suspended him. *Id.*; *see* ECF No. 25. The court treats Mr. Wixson as a pro se party, with the relaxed standards that apply to pleadings and filings from pro se parties.

**II.     Discussion**

On a motion to dismiss for lack of subject-matter jurisdiction under rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

On a motion to dismiss for failure to state a claim under rule 12(b)(6), the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor.

3

*Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court is not required to accept the parties' legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citing *Lindsay*, 295 F.3d at 1257; *Iqbal*, 556 U.S. at 679). A party must plead "only enough facts to state a claim to relief that is plausible on its face … [to] nudge[] [a] claim[] across the line from conceivable to plausible" and avoid dismissal under RCFC 12(b)(6). *Twombly*, 550 U.S. at 547.

This court holds the pleadings of a pro se plaintiff to a less stringent standard than those of a litigant represented by counsel. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that pro se complaints "however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers" (marks omitted, quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972))). However, pro se plaintiffs still have the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020).

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "The Takings Clause is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Arkansas Game and Fish Commission v. United States*, 568 U.S. 23, 31 (2012) (marks omitted). To determine whether there has been a taking, a court must first decide whether a claimant held a legally cognizable property interest and must then decide whether the government's action amounted to a compensable taking of that property interest. *American Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372

4

(Fed. Cir. 2004). In its motion, the government does not dispute that Mr. Wixson held a property interest. It disputes only whether there was a taking.

> **A. The government's cancellation of prescribed burns and firefighter training does not constitute a taking**

Mr. Wixson first alleges that the government is liable for cancelling prescribed burns and failing to train firefighters. For those aspects of his complaint, Mr. Wixson argues that the complex fire would not have destroyed his property "[i]f the Government had not canceled prescribed burns and training for Burn Bosses in California during the spring of 2020." ECF No. 19 at 6 [¶¶36-37]. Mr. Wixson asserts that cancelling prescribed burns and "leaving the ground covered in hazardous fuels" "are all affirmative acts by the Defendant to create bigger fires and ultimately take the Plaintiff's property." ECF No. 21 at 13. He alleges that those government actions effected an inverse condemnation of his property. *Id*.

The government argues that Mr. Wixson has not alleged the elements of a taking or inverse condemnation because his complaint is based on government inaction, in the form of cancelling prescribed burns and training, and that takings claims cannot arise from government inaction or omissions. ECF No. 20 at 5-6.

"On a takings theory, the government cannot be liable for failure to act, but only for affirmative acts by the government." *St. Bernard Parish Government v. United States*, 887 F.3d 1354, 1360 (Fed. Cir. 2018). In *St. Bernard*, the plaintiff alleged that the government's failure to guard riverbanks against erosion increased flooding during storms, causing flooding damage to the plaintiff's properties. *Id*. at 1358. The Federal Circuit rejected that theory, holding that "[t]akings liability must be premised on affirmative government acts," and the only remedy for the government's failure to maintain or modify the river channel lies in tort. *Id*. at 1362. "While the theory that the government failed to maintain or modify a government [program] may state a tort claim,

it does not state a takings claim." *Id*. at 1360 (citations omitted). A "taking may not result from [a] discretionary inaction." *Id*. at 1362.

Although Mr. Wixson asserts that the government's decisions to cancel prescribed burns and firefighter training are affirmative acts, the court must determine "the real nature of the claim regardless of [the] plaintiff's characterization." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981). Just as the government's failure to maintain a navigation channel constituted inaction in *St. Bernard*, 887 F.3d at 1357, the government's decisions to cancel prescribed burns and firefighter training here also constitute inaction. In fact, this court has addressed the government's failure to engage in fire control measures in other cases. This court held that that failure does not amount to government action. *Johnson v. United States*, No. 22-584, 2023 WL 1428603, at *8 (Fed. Cl. Jan. 31, 2023) (holding that "the government's failure to engage in alternative or additional fire control measures does not amount to an affirmative act sufficient to satisfy *St. Bernard*"); *Confederated Tribes and Bands of the Yakama Nation v. United States*, 171 Fed. Cl. 692, 727 (2024) (holding that allegations of "general mismanagement of the forest or the reallocation of firefighting resources ... are insufficient to support a takings claim"). The same is true here. A decision not to take an action—a choice not to conduct controlled burns or firefighter training—cannot give rise to a takings claim. Those allegations are tort claims, *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 357 (3d Cir. 1998), and are outside this court's jurisdiction, 28 U.S.C. § 1491(a)(1).

Mr. Wixson's inverse-condemnation theory does not overcome the problem that the Forest Service's decisions to cancel controlled burns and training constituted inaction rather than action. "Inverse condemnation is a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been

instituted." *Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) (marks omitted, citing *United States v. Clarke*, 445 U.S. 253, 257 (1980)). Thus, there still has to be a taking, which still has to result from government action, rather than inaction. *St. Bernard*, 887 F.3d at 1359-61.

In sum, the government's decisions to cancel prescribed burns and firefighter training cannot form the basis for Mr. Wixson's takings claim or any other claim in this court.

### B. It is plausible that the government's use of firefighting techniques may have effected a taking

Mr. Wixson also alleges that the government used inverse condemnation to take his land using backfiring, or controlled burns, to remove fuel. Mr. Wixson argues that the government intentionally set fires, and the wind caused those intentional fires to burn his land, either directly or by combining with the wildfires.

A plaintiff alleging inverse condemnation must show (1) "either that the government intended to invade a protected property interest or that the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the activity" and (2) that "the invasion appropriated a benefit to the government at the expense of the property owner, at least by preempting the property owner's right to enjoy its property for an extended period of time, rather than merely by inflicting an injury that reduces the property's value." *Moden*, 404 F.3d at 1342; *see Ridge Line v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003) (explaining that if an invasion of property is instead incidental, it is a tort and falls outside this court's jurisdiction).

To prove the first element, Mr. Wixson must establish either that the government intended to cause the destruction or that the destruction was the direct, natural, or probable result of the government's conduct.

Mr. Wixson alleges that the fire on his property would not have occurred "[i]f the Government had not started new 'defensive firing' fires and done drip torching to start new fires during Red Flag Warnings." ECF No. 19 at 6 [¶37]; *see* ECF No. 1 at 2. He argues that "[m]any [of the] fires were set by the Defendant and existing fires caused by [lightning] or other fires started by Defendant were made larger and more dangerous by the Defendant firing and torching and setting more new fires during Red Flag Warnings." ECF No. 21 at 3.

The government argues that lightning, not the government's defensive firing or backfires, caused the complex fire. ECF No. 20 at 2. The government adds that there are no facts alleged "supporting even an inference that the United States started the fire, or portion of the fire, that damaged [Mr. Wixson's] property." ECF No. 22 at 8. The government argues that Mr. Wixson has not described sufficient facts "to allow this Court to conclude that the backfires are the reason that the fire spread to his property." *Id.* at 1.

Mr. Wixson does not allege that the government intended for fire to invade Mr. Wixson's property. Instead, he alleges that the government's backfires got out of hand and later reached his land. *E.g.*, ECF No. 1 at 2 ("The fire exploded and in less than 48 hours reached my property in Kettenpom, CA."); ECF No. 21 at 12 ("When the ground is covered in hazardous materials and there is a Red Flag warning, it is certain that new fires will explode to bigger fires."); *id.* at 14 ("It is entirely foreseeable that if you start new fires during Red Flag Warnings, the fires will grow bigger and destroy more properties."); ECF No. 19 at 5 [¶28] ("The Government's management alters fires and the damage done by fires."). Indeed, as Mr. Wixson acknowledges, the Forest Service instructed firefighters not to burn private land but to "focus efforts on point protection around private cabins, historical outbuilding, and private timberlands." ECF No. 21-6 at 1-2; *see* ECF No. 21 at 11.

Because the government did not intend to invade Mr. Wixson's property, Mr. Wixson must show that the fire on his property was the direct, natural, or probable result of the government's use of backfires, or controlled burn techniques. To show that the injury was the direct, natural, or probable result of the government's actions, a plaintiff must prove "that the government should have predicted or foreseen the resulting injury." *Moden*, 404 F.3d at 1343. Thus, "the injury must be the likely result of the act," instead of the act being "the likely cause of the injury." *Cary v. United States*, 552 F.3d 1373, 1377 (Fed. Cir. 2009). "Taking a calculated risk, or even increasing a risk of a detrimental result, does not equate to making the detrimental result direct, natural, or probable." *Id.* at 1378.

As Mr. Wixson agrees, lightning started the complex fire. ECF No. 19 at 3 [¶9]. According to Mr. Wixson, the government used fire management techniques, such as backfires, to try to control the fire. ECF No. 21 at 9; ECF No. 17-5 at 2 ("Continue improving line and firing … Conduct tactical burnouts … in advance of [f]ire approaching line."). Mr. Wixson does not clearly state whether the fire that burned his property was a backfire alone or a combination of the wildfire and a backfire. *Compare* ECF No. 21 at 12 ("When the ground is covered in hazardous materials and there is a Red Flag warning, it is certain that new fires will explode to bigger fires.") *with id.* at 3 (arguing that "[m]any [of the] fires were set by the Defendant and existing fires caused by [lightning] or other fires started by Defendant were made larger and more dangerous by the Defendant firing and torching and setting more new fires during Red Flag Warnings.").

Mr. Wixson also does not state where the backfires were started relative to his property. He states only that it took "less than 48 hours" from where the backfires began for the fire to reach his property. ECF No. 1 at 2.

Even if the government's management decisions ultimately contributed to Mr. Wixson's property damage, to allege a taking Mr. Wixson would need to show that the damage was the likely result of those decisions, and that those decisions amount to the direct cause of the damage. *See Cary*, 552 F.3d at 1377-78. For example, Mr. Wixson could show that the government chose to significantly risk burning his property instead of another property, or that the backfires were started so close to Mr. Wixson's property that they would have inevitably reached his property, given the wind conditions. Mr. Wixson would have to show that it was solely a backfire, rather than a combination of wildfires and backfires, that reached his property. *See Cary*, 552 F.3d at 1377. Under the existing complaint, the court does not have enough information to determine whether the government's management techniques were the "likely cause" of Mr. Wixson's injury (*id.*) or whether they created "merely an incidental or consequential injury, perhaps compensable as a tort" (*Ridge Line*, 346 F.3d at 1356).

In *Rancho de Dias Alegres LLC v. United States*, 168 Fed. Cl. 139, 145 (2023), this court addressed another scenario in which a fire burned a plaintiff's property. The court denied a motion to dismiss, holding that the plaintiff plausibly alleged that the property's burning was a direct, natural, or probable result of the government's choice to start a fire. In that case, the government started the fire in the first place—that is, there wasn't already a wildfire burning—and started it close to the plaintiff's property. The court in *Rancho de Dias Alegres* determined that the prescribed fire in that situation could have foreseeably resulted in the damage to the plaintiff's property. 168 Fed. Cl. at 146. Here, Mr. Wixson alleges that the backfires the government set reached his property in "less than 48 hours." ECF No. 1 at 2. To be eligible for damages, Mr. Wixson would need to present specific facts showing that the government chose to light controlled burns close enough to his property (1) to have predictably resulted in his property burning, (2) directly

causing his property to burn, and (3) without the wildfires being an independent cause of his property burning.

Although the government does not address the issue, it is worth noting that Mr. Wixson will also need to prove the second prong of *Ridge Line*: that the government's invasion "appropriate[d] a benefit to the government at the expense of the property owner, or at least preempt[ed] the owner's right to enjoy his property for an extended period of time, rather than merely inflicting an injury that reduces its value." 346 F.3d at 1355. In *Rancho de Dias Alegres*, 168 Fed. Cl. at 142-43, the plaintiff alleged that the government received a benefit by choosing one property to burn over another. There, the court denied a motion to dismiss because the plaintiff needed discovery to develop facts and determine whether there was a taking. *Id.* at 147. Likewise, here, if Mr. Wixson can prove that the government chose his property over another person's property, to benefit the public, that would satisfy the second prong. Discovery would allow Mr. Wixson to either prove or disprove the narrow theory available to him: that the government started a controlled burn close enough to his property that, given the conditions, it was foreseeable that the controlled burn would reach his property as opposed to someone else's property, and that an existing wildfire did not cause his property to burn, either alone or in combination with a controlled burn.

    **C.**    **There are no other grounds on which this court can grant relief**

Mr. Wixson raises two other theories, but those theories are not bases for relief in this court. Mr. Wixson first argues that because Congress passed an act compensating victims of the New Mexico Hermit's Peak Calf Canyon Fire—the fire at issue in *Rancho de Dias Alegres*, 168 Fed. Cl. 139—the government generally owes compensation to private property owners who lose property because of wildfires. ECF No. 19 at 4-5 [¶¶24 & 27-29] ("If the Government owed compensation to New Mexico private property owners in 2022, then the Government must owe compensation to Plaintiff Wixson."). But Congress's choice to compensate victims of a wildfire in New

Mexico does not entitle Mr. Wixson to compensation here. Congress's decision to compensate the victims in New Mexico does not imply a government concession that the government had any responsibility for their injuries in that wildfire, much less any other wildfires. Indeed, Congress's decision to compensate the New Mexico victims arguably implies that the wildfire was not clearly compensable through a takings suit in this court. "[T]akings liability does not arise simply because government action helps some parties but not others." *Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1342 (Fed. Cir. 2018), *cert. denied,* 139 S. Ct. 2744 (2019). Mr. Wixson is not entitled to compensation because of congressional action for New Mexico's fire victims.

Second, Mr. Wixson argues that the government's "actions created more and larger fires and according to Harvard experts caused covid cases and covid deaths." ECF No. 21 at 15. There is no plausible argument or evidence that wildfires caused covid-19, nor is there a plausible argument or evidence that an increase in covid-19 cases benefited the government. Mr. Wixson has failed to allege any facts to support that theory.

### III.   Conclusion

For these reasons, the court **grants** the government's motion to dismiss Mr. Wixson's claims that (1) the government's cancellation of prescribed burn and firefighter training constituted a taking; (2) he is entitled to compensation due to previous congressional action; and (3) wildfires caused increased covid-19 cases. The court **denies** the government's motion to dismiss Mr. Wixson's claim that the government's use of firefighting techniques burned his property and effected a taking.

Mr. Wixson **shall file** an amended complaint by December 9, 2024 addressing details related to (1) the distance between where the controlled burns were started and his property; (2) whether the fire that reached his property was a backfire, as opposed to a wildfire or a combination

of the two; and (3) whether it was foreseeable, given the conditions, that the fire would reach his property. The court will schedule a status conference with the parties before that deadline.

**IT IS SO ORDERED.**

s/ Molly R. Silfen<br>
MOLLY R. SILFEN<br>
Judge